STATE OF IOWA, Appellee, v. P. E. KELLY, Appellant.

No. 41796.

MARCH 6, 1934.

E. F. McEniry, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and Marshall F. Camp, County Attorney, for appellee.

KINDIG, J.—On February 2, 1932, the grand jury of Union county indicted the defendant-appellant, P. E. Kelly, for maintaining a liquor nuisance, on or about October 17, 1931, at 211 East Montgomery street, in Creston. To that indictment the appellant pleaded not guilty. Accordingly, on September 1, 1932, the appellant was tried to a jury on the charge named in the indictment. The jury returned a verdict of guilty, and, on September 16, 1932, sentence was imposed upon the appellant. From the judgment thus imposing the sentence, the appellant appeals.

Three propositions are argued on the appeal. They are: 'First, that the evidence is not sufficient to convict the appellant; second, that the district court erroneously instructed the jury; and, third, that the sentence was not imposed according to law.

I. At the close of the evidence, the appellant made a motion for a directed verdict in his favor on the theory that the evidence was not sufficient. This motion was overruled. A complaint of that ruling is now interposed by the appellant.

It is claimed by the appellant that his position in this regard is sustained by the case of State v. Friend, 207 Iowa 742, 223 N. W. 546. In that case, we held, in effect, that the mere finding of intoxicating liquors in the home of the head of the family is not enough in and of itself "on which to base a finding that a son, as a member of the family, was in possession of the liquor." That is not the situation in the case at bar. According to the record, the appellant had occupied 211 East Montgomery street, in Creston, for a period of approximately five years. There the appellant conducted a feed, produce, and near beer business. Complaints were made to the officers of the illegal traffic in intoxicating liquors at the appellant's place of business.

On two occasions the premises were raided by officers armed with search warrants. The first search was made in 1930 and the

second on October 17, 1931. Chris Thompson, the sheriff of Union county, in which Creston is located, made the last search with the assistance of Charles Cruzen, chief of police in Creston, C. J. Hines, a policeman in that city, and Virgil Jungst, a deputy sheriff in Union county. It seems that the sheriff and Mr. Hines went to the basement of the building, while Mr. Cruzen and the deputy sheriff searched the office. Before making the search, these officers read the search warrant to the appellant. Virgil Jungst, the deputy sheriff, testified as follows:

"I had the warrant. The sheriff and I went to the south double door. From there (I went) into the office through the east door. We found the Kelly boys (the appellant and his brother) and other fellows; Pete Kelly (the appellant) was there; I read the warrant in front of Pete Kelly. I said, 'I got a search warrant for the place'; he (the appellant) started for the east door that goes out into the storeroom; the chief (Chief of Police) stopped him; he (the appellant) came back and went to the south wall and *pulled a wire;* it went up through the ceiling and across the rafters; it was in the southeast corner along the south wall; I said, 'Is that a signal' and he (the appellant) did not answer; then I heard a crash like breaking glass; I searched the cloak room and wash room and behind the counter, then went into the basement where the rest of the men were. The sheriff had a gallon jug (of intoxicating liquor) in his hand; there was a drain in the southeast corner of the basement, under the stairway. There was broken glass over the drain; there was an odor of alcohol there; there was a rope hanging a board to the ceiling; there was a cleat on the wall where the board apparently had sat; there was another cleat about the length of the board from the other one; we put the board on the cleats and it sat there; the rope went up to the ceiling through the floor and into the office and tied to a wire where Mr. Kelly (the appellant) pulled it. I operated the device; we laid the board on the cleats and I told the rest of them (the officers) to watch and I would pull the wire and it raised the board off the cleat; anything that was setting on the board would have to slide off and hit right over the drain." This testimony of the deputy sheriff is corroborated fully by the other officers.

Not only does the record contain the foregoing testimony of the deputy sheriff and the corroboration thereof by other witnesses,

but, in addition thereto, there is the testimony of the sheriff as follows:

"I went downstairs and went behind the stairs and found a jug of alcohol; I saw a broken jug laying under the stairway. * * * I took the liquor. * * * There was a strong smell of alcohol in the cellar; I saw wet places around the drain. * * * A broken jar was lying over the drain. * * * Exhibit 2 is a jug we found laying on top of the broken glass in the basement of defendant's (appellant's) place. I examined the contents of the jug by tasting, smelling, and burning it." The officers testified that the liquor found in the basement was an intoxicating beverage.

It is to be remembered that the liquor was found in the appellant's place of business. He, and no one else, pulled the wire which led through the building into the basement. Why should such contraption be maintained by the appellant? When testifying, the appellant suggested that the alcohol belonged to his brother, and that the wire and rope contraption was a signal device to call people from the basement for legitimate purposes. Of course, that testimony, as controverted by the statements of the officers, presented a jury question, and the jury found against the appellant. Manifestly there is a distinction between the facts in this case and those involved in State v. Friend (207 Iowa 742, 223 N. W. 546), supra, relied upon by the appellant. In the Friend case, the defendant was not identified as the possessor of the liquor, while in the case at bar there is much evidence indicating that the appellant was interested in the intoxicating liquors found by the officers in the basement.

There has been no attempt to set out all the evidence in the record, but it is manifest that enough of the record has been set forth to indicate that a jury question was presented on the issue of the appellant's guilt of the charge made in the indictment. This conclusion is sustained by the following cases: State v. Bamsey, 208 Iowa 796, 223 N. W. 873; State v. Bruns, 211 Iowa 826, 232 N. W. 684; Iowa v. Tibbits, 207 Iowa 1033, 222 N. W. 423; State v. McGee, 207 Iowa 334, 221 N. W. 556.

II. Not only does the appellant ask for a reversal on the ground just discussed, but, as before explained, he demands such reversal also because the district court improperly instructed the jury. Under instruction No. 8, the district court told the jury that they were not confined, in determining the appellant's guilt, to the

exact date named in the indictment, but that they could find the appellant guilty if he committed the offense at any time within three years before the indictment was returned. That instruction is erroneous, the appellant argues, because the effect of it is to put him on trial twice for the same offense. The appellant's contention is based upon the proposition that he previously was indicted and tried for a liquor offense alleged to have been committed at the same place within three years before the indictment in the case at bar was returned. Upon the trial in the former case, the appellant was acquitted.

It is to be recalled that the officers searched the appellant's place of business for liquor during the year 1930. So the previous indictment, trial, and acquittal grew out of that search. Some of the officers, while testifying in the case at bar, told of finding intoxicating liquors on the appellant's premises on the former search; that is to say, the evidence in the case at bar includes the facts relating to the last, and some of the facts relating to the previous, search of the premises. Therefore, because the appellant was acquitted of the first offense, he now claims that the present indictment, in effect, illegally and unconstitutionally puts him again on trial for the same offense.

Section 12, article I, of the Iowa constitution, provides:

"No person shall after acquittal, be tried for the same offence."

In recognition of this constitutional provision, we held in State v. Reinhard, 202 Iowa 168, 209 N. W. 419, that, when the state bases an indictment for nuisance on a series of acts occurring during a specified period of time, it thereby segregates such acts from all subsequent acts, and irrevocably identifies and stamps said acts as one complete offense; and, if it suffers an acquittal, it may not thereafter maintain an indictment based (1) on said segregated acts and (2) on other acts subsequent thereto.

The constitutional provision above discussed, however, does not apply to the facts in the case at bar. There is nothing in the record to indicate that the offense of which the appellant was acquitted under the former indictment is the same offense as that with which he is charged under the present indictment. As a matter of fact, the record does not disclose for what offense the appellant was indicted, tried, and acquitted the first time. Concerning this, we said in State v. Broderick, 191 Iowa 717, reading on page 719, 183 N. W. 310:

"It is clear that the prohibition of the statute and of the Constitution (the prohibition now being discussed) is against a second jeopardy for the same offense; that is, for the identical act and crime. It is stated in some decisions that to entitle a defendant to plead successfully former jeopardy the offense charged in the two prosecutions must be the same in law and in fact. State v. Norman, 135 Iowa 483, 113 N. W. 340. If the offenses are distinct in point of law, the plea will not avail, however nearly they may be connected in point of fact. The test, then, is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense, which means the same criminal act, transaction, or omission."

To the same effect see State v. Boever, 203 Iowa 86, local citation 90, 210 N. W. 571.

Under the Iowa intoxicating liquor laws, many offenses are named. The acquittal of the appellant under one of those offenses would not necessarily bar the right of the state to indict him in the future on another of the offenses. That is true, because the offenses are not the same. For instance, we said in State v. Boever (203 Iowa 86), supra, reading on page 90 (210 N. W. 571, 573):

"The essential ingredients of the two crimes, to-wit, liquor nuisance, and the unlawful possession of intoxicating liquor, are not the same, although some of the same evidence * * * may be offered to sustain the indictment in each case. The same evidence test is not infallible. * * * Furthermore, the same act may violate more than one criminal statute. In State v. Graham, 73 Iowa 553, 35 N. W. 628, a plea of jeopardy, based on the averment that the charge of keeping intoxicating liquors was the identical keeping charged in an indictment for a liquor nuisance, was held not sustainable."

Hence, because the appellant has not set out in the abstract the nature of the offense for which he was acquitted, we cannot say that the effect of the instruction given by the district court permitted the jury to twice try the appellant for the same offense.

III. Continuing his argument for a reversal, the appellant finally complains because the district court improperly sentenced him. According to the record, the district court sentenced the appellant to pay a fine of $500 and to serve six months in the county

jail. After thus sentencing the appellant, the district court then proceeded in its judgment by saying:

"It will be the further order of the court that if the defendant (appellant) pays the fine and the costs of this prosecution on or before the 1st day of October, 1932, and thereafter serve 30 days of the jail sentence of the 6 months' time that the balance of the 6 months' jail sentence will be suspended, and the defendant (appellant) will be paroled to Mr. Chris Thompson, the sheriff of this county, during good behavior. * * * If appeal is taken in this case then the order of suspension of the sentence is not to be operative, and the defendant (appellant) will have to abide by whatever order, judgment and sentence is finally given him by the affirmation or reversal of the case by the Supreme Court."

It is not the appellant's contention that the district court has denied him the leniency provided in its judgment in case the fine is paid and a certain amount of time served in jail. But; on the other hand, the appellant assigns error as follows:

"The court erred in sentencing the defendant (appellant) in such a way as to impair his right of appeal, and, as the trial court said, require him to take the gambler's chance."

Of course, nothing done by the district court prevented the appellant from taking an appeal. As a matter of fact, the appellant has appealed, and he is now having his case reviewed thereunder. It is provided in section 1930 of the 1931 Code that:

"Whoever shall erect, establish, continue or use any building, erection, or place for any of the purposes herein prohibited, is guilty of a nuisance, and upon conviction shall pay a fine of not less than three hundred *nor more than one thousand dollars and costs of prosecution,* which shall include a reasonable attorney's fee to be taxed by the court, and stand committed to the county jail until such fine and costs are paid, and be imprisoned in the county jail for a period of not less than three months *nor more than one year."* (Italics supplied.)

So it is apparent that the penalty inflicted by the district court was much less than the maximum allowed by statute. This the district court had a right to do. Moreover, the district court of course could have thus sentenced the appellant without appending to its

judgment the provision for leniency. If such provision for leniency had not been added to the judgment, the appellant could not have legally complained. In view of the fact that judgment would not have been illegal or excessive under the statute if it had not contained the provision for the leniency, then under no theory of law can it be said that the judgment is excessive because the leniency therein was granted only upon a contingency. Whether the so-called leniency provision in the judgment of the district court is valid, we do not now decide or suggest. See State ex rel. Preston v. Hamilton, 206 Iowa 414, 220 N. W. 313. Nor do we decide that, if such leniency provision is valid, the appellant is or is not entitled to the benefits thereof. Those propositions are not before us, and therefore we pass no judgment upon them.

Of course, the district court cannot prevent the appellant from appealing, nor can it penalize the appellant in the event he exercises his statutory right to appeal. So, whatever right the appellant originally had under the judgment of the district court, he has not lost because he appealed. We do not approve, but rather we disapprove, the form of sentence imposed by the district court in this case.

But, because the appellant has not shown reversible error, the judgment of the district court must be, and hereby is, affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.

MITCHELL, J., dissents.